Good morning. May it please the Court, I am Tamara Malumbo, appearing on behalf of the appellant, MRP, a juvenile. I will attempt to reserve five minutes for rebuttal. In this case, the government failed to show that it did not violate the JDA and had constitutionally obtained the child's statements before relying on those statements to charge him. Thus, under United States v. CM, the information must be dismissed. Additionally, reversal is required because the Court allowed Agent Mignon to identify the substance in this case in violation of Daubert and the child's right to confrontation. The government forfeited its opportunity below to carry its burden that it had not violated nearly every provision of the JDA as alleged. Because the government did not show that it complied with the JDA below, there are two ways to dismissal in this case. First, if the government violates any of the child's constitutional rights, the Court does not inquire as to whether or not the child is prejudiced. Kennedy. Let me ask you that. What constitutional right, as opposed to statutory right, did the government violate? Malumbo. The government violated the child's Miranda rights. It was required to show below. Kennedy. Did it use a statement? Malumbo. It did use a statement to support charging the child in the information. And that is the prejudice that's alleged. Kennedy. So you're expanding Miranda from a testimonial prohibition to an administrative prohibition. Malumbo. It's not an expansion. It's something that is specifically required under the analysis. This Court actually looked at whether or not Miranda was compliant in Jose D.L. as well as C.M. In C.M., the government did not introduce the statement in its case in chief. The proposition that any constitutional right justifies dismissal is not only found in the United States v. C.M., but also, I believe, Doe 1988. It was not a new proposition advanced in C.M. Kennedy. So you're what you're saying is if they take a statement without giving him his Miranda rights, they can't use any information procured in that statement or documented in that statement to charge him, even if he says, yes, I'm an illegal, yes, I have been smuggling marijuana, yes, I killed three people. They can't use that for purposes of charging him. Is that what you're saying? It cannot be used. They cannot rely on it. If they rely on a statement that they did not comply with the Constitution or the JDA, they cannot be used to charge him. Now, how do you know they relied on that statement rather than other circumstantial evidence? Because it was specifically cited to you in the affidavit supporting probable cause in this case. There's no question that they did not rely on it. So you're claiming that but for the violation of the Miranda rights, the government would never have brought this claim against the juvenile? No, Your Honor. We're claiming that that was one that they relied on in part to show that the child knowingly committed the crime. This case was a constructive possession case. This is not the typical backpacking case in which there's evidence of strap marks or burlap fibers on the person of the defendant. This was a situation where the alleged contraband was found 90 feet away, hidden in brush. And so these statements were necessary to overcome mere presence, as stated in United States v. Terry. But there was circumstantial evidence, as Judge Baez suggested, they had other burlap bags filled with their food that were also found a number of feet away. There were they found several things in addition to the drugs. Would that not have been sufficient? Under CM, no. And the reason for saying that is the child in that case, in an alien smuggling case, had two people hidden in the backseat of his car, went through a border patrol checkpoint without being waved through. The agents had to spike his car. Once the vehicle was spiked and the car stopped, the juvenile and the aliens inside the car fled from the vehicle and the juvenile was apprehended. A description of the driver was given, the shirt that he was wearing, and the shirt matched what the juvenile was wearing. And the car keys for that vehicle were found in the juvenile's pocket. Additionally, the passenger was detained as material witnesses and testified against that child at trial. Nevertheless, this Court said because they used the statement to support charging him, it was not a but-for causation that they were looking at. It was simply they used the statement to charge him and that was enough because the purpose of the JDA is to protect the juveniles. It's a prophylactic safeguard of the JDA that the Court is committed to protecting. And the trend, as seen in CM, is to hold the government to the strict requirements of the JDA. What you're saying is that the Juvenile Dissension Act incorporates, by its terms, constitutional provisions such as Miranda, correct? That is correct. Now, let me ask you this. I've been looking in my book here. I don't find that I brought the case with me, but I have a note that there's a case called Chavez v. Martinez holding that the privilege against self-incrimination is not violated unless the statement is used testimonially against the defendant. Now, that seems to me to be the Miranda rule that I am acquainted with. What you're saying is that it's a violation of the Miranda rule because of the Juvenile Detention Act to use the statement in any way to charge the individual, whether it's used testimonially against him or not, because he pleaded guilty, right? Well, what I'm saying is that there's a prophylactic – in order for this Court in the past to have been satisfied that a juvenile's rights were not violated, the rights was something this Court specifically considered in Jose D.L. and R.R.A. Daschle. But as a provision of the J.D.A. or as a provision of the Fifth Amendment? I believe it was looked at in the second step of the analysis of when there's a violation, was there a violation of the child's constitutional rights? Two different questions. There can be a violation of the statute, right? Yes. And you can't use the un-Mirandaized statement to charge him. That's a violation of the statute. Without going into whether that's right or wrong, let's accept that. That's quite a different matter from saying there's a violation of the constitutional rights under Miranda, because as I understand Miranda, failure to give a Miranda warning doesn't stop anything if you don't use the man's statement. There's no right to get a Miranda warning. Well, they did use the statement in this case to give the information. They used it testimonially in Chavez v. Martinez, and that is the Miranda right. You may have a statutory right which is violated, but not a constitutional right. Do you accept that possibility? I'm not familiar with Chavez-Martinez, but if that's what the case states, I will admit that's what I've not read it. But your argument is that somehow the Juvenile Detention Act incorporated Martinez as a constitutional right as to the use of a statement for purposes other than testimony. I'm not sure I understand the Court's question. Then it's a bad question. So what I'm saying is, how do you get to the point of saying there's a violation of the Fifth Amendment right, which is Miranda's right, self-incrimination, Fifth Amendment right? Why has it become a Fifth Amendment violation when the statement is used administratively to charge rather than testimonially to convict? It's not used administratively. It's being used in a criminal to institute a criminal proceeding. I disagree with the Court's distinction that it's being used administratively. Well, it's being used by an executive branch officer to charge an individual. Right? That's called administration. So it's being used for that purpose. How does that become a violation of the Fifth Amendment right, which is not to incriminate oneself? The statement was presented to a magistrate to institute criminal proceedings. Yes. And so I understand the Court's position that it was used administratively, but we disagree with that point, that even if the Court did not find a constitutional violation in this case. But let me ask you this. Suppose they use the statement not to charge him, but to go out and do some further investigation. And then based on that further investigation, they charge him. Would you say that the use of the statement to conduct further investigation or to suggest further investigation unmerandized is a violation of his Miranda warnings? Actually, I would, Your Honor. Yeah. So. Because they did not constitutionally obtain the statement, and they're using it in a way to prejudice the individual? Yes. But what you're saying is that the police can't get a statement from anyone unless they merandize him first. To get a statement from at least a juvenile, they can't get a statement from him unless they merandize him first, regardless how they use it later. Is that your position? Your Honor, that's not my position. The trigger for the Miranda warnings under the JDA is custody. So if the child is not in custody, then we wouldn't be looking at that situation. So it's not as broad as the Court is suggesting. But even if there was no constitutional violation in this case, which we're not conceding, the government was nevertheless required to prove that its use of the child's statement was not harmless beyond a reasonable doubt. All right. And that they cannot show under the facts of this case, because they used it to institute charges against him. I know that the government has relied on other information that's provided in that there was other information available to the Court to support charging the juvenile. The facts in CM were far worse with respect to that juvenile than the child in this case. The evidence in this case was far more circumstantial, absent use of the statements. Were there other due process violations in this case? Another due process violation would have been the failure to give the child Miranda warnings in a language he could understand. The government did not dispute below or on appeal that that child speaks Popoluca. He's an indigenous child from Veracruz. The Miranda warnings were issued in Spanish, and they had the child sign what purported to be a transcript of his statement in English. No one contended that the child spoke English. And that procedural safeguard was not provided to him. Under Perez-Lopez, in order for someone to make a knowing and voluntary waiver of Miranda, they must be given Miranda in a language that they understand so that they can knowingly act based on knowledge of their rights. And with that, I see that I'm going to reserve the rest of my time. Let me just ask one other question. Were there other due process violations in addition to the failure to use the appropriate language? Your Honor, they failed to show that the statement was voluntarily obtained. What about advising his parents? There's no evidence that they even attempted notification. We asked the court to take evidence. The government declared that it was moot and declined to put on evidence. We made a proffer that the record would not have shown that parental notification was made and that consular notification might have been made. We weren't sure. Well, the government said it had in-house information, which it never revealed, did it not, that someone had attempted to contact his mother. Is that right? The government did make that statement. We disputed it. And even had it been sufficient or even had that proffer been acceptable to evidence, it did not state whether or not they had made parental contact, when that contact had been made, who made that contact. And how long they waited before beginning interrogation as to give the parent a chance to contact the authorities before interrogation began. All right. Thank you. I don't want you to use it more time. We'll give you two minutes. Thank you. Additional to that, 126. Thank you. Thank you. May it please the Court. My name is Bruce Ferguson. I'm the United States Attorney on behalf of the government in this case. The issue which has been addressed so far is the alleged JDA violations. The government below did not attempt to litigate but did not concede that there were in fact JDA violations because it was clear that with the statements not being used, there was no due process violation and there was no other prejudice to the defendant, so it would simply have been pointless to get into those details. Well, according to Ms. Malembo, there's some cases that say that the statements were, quote, used because they were seminal to the charging allegations. Well, I believe that she's perhaps overstating the case law. If we look specifically at the D.L. case, and I'd cite the Court to page 453 F. 3rd at 1126, it specifically says that in order to invoke that particular doctrine, if you will, it has to be the basis for the charging instrument or for the decision to go ahead with the charge. It's not just the fact that it may be part of the matrix of facts. And as a matter of fact, the district court, in this case, in looking at this I'm going to deny the motion to dismiss. Assuming a violation occurred, it was not a violation of prejudice to the juvenile because with or without any statement and with or without any reference to the information, there was sufficient evidence for the juvenile to be arrested and to be detained for further processing. So Judge Roll found that that particular statement, whatever it was, was not the basis, the sole basis anyway, for the charge. And if you look at the actual P.C. documents, it talks about the entire context of being the defendant being found in conjunction with these other people together with the marijuana and the other people making statements implicating him. Mr. Ferg, a question to that point. What is our scope of review to review the finding of Judge Roll that there was sufficient evidence to charge this juvenile independent of the statement he gave before he was Mirandized? I did not find any case law specifically addressing that, but I would argue that it would be for an abuse of discretion. Because it's not a question of legal sufficiency, but what was in fact the basis for the charge. And when you look at the entire context of was there sufficient evidence, there certainly was, quite aside from the defendant's own statement. Well, being concerned about due process, I find my reading of the materials that the government appeared to have violated the GDA in at least three ways. Advisement of rights, advisement of rights in a foreign language, failure to notify the MRP's parents, failure to notify the consulate. And in response to we notified his mother, you never gave opposing counsel anything to verify that. Well, again, it was a different attorney below. But apparently the feeling was that there was no need to litigate those kind of details because even assuming arguendo that those violations had occurred, it still is necessary before there is any remedy for an alleged GDA violation to show either due process violation or prejudice under the Act. And because it was clear that that those other components could not be met, that it was not. Why not? Why wasn't there prejudice here? If his parents had intervened or if the consulate had intervened and given him counsel? Because this Court's cases which have addressed those kinds of situations have said that the point of that particular provision of the Act is to ensure that the defendant waives his rights knowingly. But it all goes back to Judge Bayh's point earlier that the statement never came in, and so the fact that there may or may not have been some adverse influence on the decision to make the statement really is irrelevant because the statement What about your answer to the charge that although the statement did not come in, it led the government to information that upon which the information was based? Because Judge Rohl found specifically that it was not the sole basis for the charge, that it was the entire context laid out in the probable cause statement, including the association with the other people, with the large amount of marijuana, and the statements which incriminated all of them, including the defendant, in this case. Counsel, could you elaborate on that last point, please? What were the statements in the record made by other people found there with the marijuana that inculpated him? In the excerpts of record, there are actually two of these probable cause statements One is at page 11 of volume 2 of the excerpts, the other is at page 19 and they're essentially identical except that there is a small correction in the second one which added the conspiracy charge, and basically it says they were found to be naming all four of these co-defendants in close proximity to four bundles of marijuana, collectively weighing 77 kilograms, and then it states that three other named individuals made statements stating that they were carrying the marijuana bundles and carrying food for the group. They, collectively. And so, again, we're only dealing with probable cause here to charge so it doesn't have to be preponderance of evidence beyond reasonable doubt. It's simply PC to go forward. And, again, Judge Rohl specifically found that based on all of those things, quite aside from whatever the defendant himself admitted to there is a basis to go forward with the charge. And so, there is not a showing of prejudice and, again, just alluding to Judge Baya's questions to the defense it is strictly a question of prejudice under the JDA. There isn't a constitutionalization, but rather simply whether there was prejudice under the act, which is this part of the analysis. So, when the statements were not admitted, there was no due process violation and there was no due process violation or prejudice because the statements were not effectively used in any meaningful way. What was the reason the government did not reveal their in-house information? Well, I've not discussed that with the counsel, but he simply said we have this information, but in any event we don't think we need to get into that because they can't show a due process violation or prejudice. And so it's kind of like an ineffective assistance of counsel claim. Why burden the court with perhaps lengthy fact-finding, which is essentially irrelevant, to find ineffective assistance if there's no prejudice? And that's kind of the approach that was taken here. Thank you. Now, was there any evidence in the record that this juvenile was in the vicinity of the smugglers and the marijuana for some legitimate purpose? You know, like evidence he was in a Boy Scout troop that just happened to be out where they were on a nature walk? No, there was not. They were all found, the ones that didn't scamper away into the boonies, which also is very suggestive that this was not a high school nature walk. The defendant included was with these several other people with a bag that contained food which was wrapped identically to the marijuana bundles which was found a short distance away. It's association, it's circumstantial evidence, but this court has accepted that I can address the other issues that were raised as far as the marijuana identification testimony. If the court has questions or... I didn't hear that raised by Ms. Malembo, but she might talk about that in the extra two minutes we've given her. So what is the government's position as to whether Mr. Nuno violated the Melendez-Diaz rule by saying the testers have confirmed that I've never been wrong about marijuana? Well, first of all, our position is that the standard of review is only for plain error. It was pointed out in, I believe, a reply brief that the first time any suggestion of a confrontation clause violation was made was in a post-trial renewal of the Rule 29 motion, but in fact that's making it essentially a legal argument, a question of legal error which is not appropriate in Rule 29 anyway, and already at the trial proceeding itself there had been both a Rule 29 motion immediately after the government's testimony and then at the close of all the evidence and before argument, so in effect the defendant had already had his opportunity to, quote, bring that matter to the court's attention and didn't do it. So there was no contemporaneous objection, so it's for plain error only. When we look at that, the proceeding was complicated or a little bit murky in a sense because it was being conducted both with regard to pretrial motions to dismiss and also the actual bench trial all at the same time. But if we look at each of those kinds of purposes, first of all, the confrontation clause simply doesn't apply when you're looking at questions of foundation of evidence because it's a trial right. So if we're looking at a question of pretrial foundation which is the way the district court described it, the confrontation clause simply is not applicable. Now, if there were a confrontation clause issue if that statement had been relied upon by the district court in making its findings of guilt. As I pointed out in my answering brief, if you actually read Judge Roll's findings, he starts out by addressing and saying as far as the foundation for the testimony, then it's considered that older Aldama case had dealt with admission, including the agent's qualifications in not having had his opinions disverified, if that's the right word, by any subsequent testing. But that was strictly alluded to by the district court with regard to foundation for the testimony. Well, it goes to the weight of his testimony, doesn't it? Pardon me? It goes to the weight of his testimony. I've never been found wrong. Right? I've pitched the perfect game. Doesn't that – isn't that – the statement I've never been found wrong means that somebody has found him always to be right, that someone is a declarant who's making an assertion to prove the truth of the matter without being confronted or cross-examined. It's classic hearsay. It's classic confrontation problem. It's Melendez Diaz. It's potentially that, but when we look at the actual findings when Judge Roll described what he was doing and what he – To be plain error, it has to be substantially affecting the rights of the defendant, and it doesn't do that because there's so much other evidence that this was marijuana. That's correct, and also Judge Roll's discussion of the evidence does not show any reliance on that. He does not even mention it in the context of his actual ruling on the sufficiency motion. And so we have no reason to believe that, in fact, he inappropriately relied on it for that purpose. There's case law from the Supreme Court that I gave to you where the court said, if it's ambiguous, you can't assume that the judge was doing the wrong thing, particularly when the review is deferential, as it is here. But in addition to that, when you look at all the evidence, and there is much more, when you find the amount of marijuana, the way the people were conglomerated together, people scampering off. You don't run away if you're backpacking sage through the Arizona desert. And also, I just noticed, or wanted to mention, the defense has cited to a 30-year-old study which suggested that there was an error rate in this kind of visual identification of marijuana. But when you read it, the error rate that was found in that study was 14 percent, which means that 86 percent of the time, those visual identifications were correct. And so that seems like certainly significant evidence, if it had been presented to the district court, which it was not. So there's plenty of evidence here. If there was an error, which we would not say that there was, it clearly was harmless. Thank you very much. Mr. Farg, Ms. Malumbo, you've got three minutes and 26 seconds. Put two more minutes on that, would you please? Briefly, I would just like to clarify who had the burden below to show that it was not a due process violation and to show that the use of the statement was harmless, beyond reasonable doubt. That was the government's burden. Juvenile mail case that was issued by this court in 2010 firmly puts that burden on the government. It is not analogous to Strickland, because the government had to show that below. And they failed to do so and waived the opportunity to do so by asserting that it was moot. Additionally, the causation for the harm is not proximate causation. If you look at CM, there was plenty of other evidence to justify charging the juvenile. Therefore, it doesn't have to be a but-for-the-statement analysis that the juvenile would have been charged. The evidence in that case was far more condemning with respect to that child. Further, under that case, the other statements would have been irrelevant, because as in CM, those passengers that were illegally being transported in also testified against that child. The use of the statement in this case was not harmless beyond a reasonable doubt, because it was used to show specifically that the child knowingly committed this crime. The government pointed out you don't run if you're backpacking sage. You do run if you're there illegally, which the child was here in the country illegally. And that was argued before the court below. Additionally, with respect to the Daubert issues in this case and the confrontation issues, I mentioned earlier that the agent was not qualified to give an opinion in this case. With respect to the confrontation issue, the government was specifically required to show that this was marijuana as defined in 21 U.S.C. subsection 802.16. Congress went to great lengths to exempt several parts of the plant cannabis sativa L from prescribed controlled substance. It was specifically required to show the presence of THC. Absent Agent Munoz's testimony, there was no testimony that the substance contained THC. The government sought to get that evidence in through Agent Omersky. And Agent Omersky was unable to do so because Agent Omersky could not even identify what test was being used. But Munoz said two things. One, I've been in this business for a long time, and I can tell marijuana when I see it, and that was marijuana. And then secondly, and by the way, I've never been wrong. The testers have confirmed that. Why isn't the testimony of Munoz on the first part? I've been around for a long time. I've testified a lot. I can recognize marijuana. That's marijuana. Why does it not come in under Doebert as defined in the Cummerill Tire case? He has to be shown to be qualified to make that statement. Even though he may have been around for a while. Didn't Judge Roll accept his experience as a basis for the preliminary factual basis of foundation? Judge Roll did accept it, but it was insufficient. What was wrong with that? Is that an erroneous ruling on Judge Roll's part? It was an erroneous ruling. Why? It was an erroneous ruling because although he had been with Border Patrol for seven years, and had during that seven years come in contact with marijuana maybe 30 times, his training was limited to looking at pictures. And he stated that he was confirmed to be correct in his DEA cases, but never testified which of those 30 cases had been DEA cases. So there was no basis in the record for the court to have been assured that he was qualified to give the opinion he did. Could the testimony just be lay opinion? Absolutely. Testimony of that. And why is that? Because it was predicated on experience and training. Testimonies based on specialized experience and training is specifically excluded from Rule 701. There is no third hybrid category of experience lay witness testimony. If you're going to testify based on experience and training, you need to qualify under Rule 702 by showing that you have, one, the requisite experience of training to render an opinion, and, two, showing that your methodology is reliable. There is no hybrid third category, as the government has urged this Court to create in its answering brief. All right. Thank you very much. Thank you, Your Honor. We'd like to congratulate both parties for a very interesting and illuminating argument. And the matter of U.S. v. MRP, a juvenile is submitted. And that takes us to the end of the calendar and the end of the week, and this Court stands adjourned. Thank you very much. All rise.
judges: Nelson, Gould, Bea